(29 Misc. Rep. 494.)

PATCHEN v. WAEFELAER et al.

(Supreme Court, Special Term, New York County.  November, 1899.)

1. LOANS BY WIFE—CONSIDERATION.

Defendant, some 25 years before making an assignment, deeded certain property to his wife, the consideration being love and affection.  Subsequently defendant received from his wife, for use in his business, certain sums which she obtained by mortgage and sale of such property.  No note or other obligation evidencing the debt was ever made, nor was any entry thereof kept on defendant's books.  Defendant testified that he did not agree to return it, that his business was so prosperous he thought he could return it whenever she wanted it, and intended to return it as soon as he was able.  He paid no interest on said sums until three days before his assignment.  Held, that this showed that the property given to the wife was regarded as hers only until defendant needed it for his own use, and that the proceeds from mortgage or sale, when received by him, were not loans from his wife, but became, with her consent, his absolute property.

2. ASSIGNMENT FOR CREDITORS—SCHEDULE OF DEBTS.

The inclusion, by an assignor, in his schedule of liabilities, of a pretended debt to his wife of $15,500, and the payment, three days before his assignment, of $1,500 interest thereon, is sufficient to invalidate his assignment, where such money is necessary for the payment of his lawful debts.

Action by Frederick M. Patchen against Louis Waefelaer and George B. Rofkar, as assignee, etc., to set aside an assignment for benefit of creditors, made by said Louis Waefelaer.  Judgment for plaintiff.

Howard R. Bayne, for plaintiff.
P. Q. Eckerson, for defendant Rofkar.

BEEKMAN, J.  This action is brought by a creditor of the defendant Louis Waefelaer to set aside a general assignment for the benefit of creditors, made by him to the defendant Rofkar on March 19, 1894, on the ground of fraud.  The assignee only has answered the complaint.  The plaintiff has not reduced his claim to judgment, but has alleged in his complaint that Waefelaer was a nonresident of the state, and that it was impossible to personally serve him with process in this state, or otherwise to acquire jurisdiction over him here in any action that might be brought against him upon the claim.  It has been held by the appellate division in this case that under such circumstances this action may be maintained.  Patchen v. Rofkar, 12 App. Div. 475, 42 N. Y. Supp. 35.  The proofs given upon the trial fairly sustain the allegation of the complaint in this regard, as well as the validity of the indebtedness of Waefelaer to the plaintiff.  The assignment is attacked on the ground that the assignor had fraudulently included fictitious debts in his schedules; that he had also paid out money on the eve of the assignment to persons who had no honest claims upon him; and that this was done for the purpose of withdrawing from the operation of the proposed assignment and from the reach of his creditors the money which was thus misapplied.  The alleged fictitious debts appear in the schedules,—one in favor of Mary C. Waefelaer, the wife of the assignor, for $15,500, for money loaned; and the other in favor of one

Gerard Waefelaer, for $13,750, also for money loaned. With respect to the latter I am inclined to the view that the charge is not sustained by the evidence. My opinion, however, is otherwise with respect to the alleged indebtedness to the wife. The same may be said with respect to the sums paid out before the assignment was made, the defendants having satisfactorily accounted for them except the item of $1,200 which was paid to Mrs. Waefelaer on the 16th day of March, 1894, three days before the execution and filing of the assignment. It is claimed by defendants that this was paid to her on account of accrued interest on the alleged loan. The claim of the defense is that this loan was made up of three sums received from Mrs. Waefelaer,—one on January 11, 1882, for $6,000; one on February 18, 1882, for $6,000; and one in 1886, for $3,500; that the two items of $6,000 each were obtained by her by mortgaging two parcels of land, the title to which stood in her name, each for one of said sums, and that the item of $3,500 represented the proceeds of one of said parcels, which was subsequently sold in the year 1886 for $9,500, subject to the mortgage upon it. It is not disputed that the legal title to the property above referred to was vested in Mrs. Waefelaer about the year 1867 or 1868, and it also appears from the testimony of the assignor that it was transferred to her by him in consideration of natural love and affection, and that she never had any property of any kind except such as came to her by gift from him. Of course, these transfers are not the subject of assault as having been fraudulently made at the time. The proofs show that the assignor was then, and for years afterwards continued to be, solvent; but it is contended by the plaintiff that the property was still dealt with as if it belonged to him, and that he was permitted to receive and appropriate as his own the proceeds of the mortgages and sales that were made. There is much in the evidence to support this view, and to rebut the claim that there was any relation of debtor and creditor between this husband and wife, with respect to the alleged debt. In the first place, no entry of any kind appears in the assignor's books showing the existence of any such debt, nor, according to his testimony, was any interest paid to her upon it at any time, except the $1,200, which he gave to her three days before he failed in business. No note or other obligation in writing, in any form, evidencing the debt, was ever made; nor is there any proof, outside of the assignor's own testimony, that his wife had any claim whatsoever against him. His bookkeeper had no knowledge of the matter, and when he prepared the check for $1,200 for signature the only information imparted to him on the subject by Waefelaer was that he wanted it for his wife. Only one account with Mrs. Waefelaer appears on the assignor's books. It is entitled "Mrs. Louis Waefelaer Loan Account with Hoboken, New Jersey," and shows what is described as a loan made by her to her husband of $3,500 on April 11, 1893, and the payment of the same, with interest, on April 29, 1893. This, however, was not the alleged loan of $3,500 which forms a part of the aggregate of $15,500. When the assignor was asked why he entered this loan in his books, and not the others, his answer was, "I wanted to return that amount of

money to her to buy another house, and I agreed to return it to her when she would have needed it." He was then asked the following question: "Q. That is the only explanation that you can give of the failure to put that 1892 loan, for the difference, in your entering one of those loans in your books and not entering the other?" His answer was: "A. That is the only difference,—that I promised to return it. The other I used in my business." Thereafter, this testimony was given by him: "Q. When you received the first $3,500, didn't you agree to return it to her? A. No, sir. Q. You did not? A. No, sir. Q. And is that the reason why you did not enter it in your books? A. That is it. Q. That was the only reason? A. Yes, sir; the business was so prosperous, I thought I could return it to her any time she wanted it. Q. But you did not agree to return it? A. No; I did not agree to return it." It will be recalled that this $3,500 forms part of the alleged indebtedness of $15,500. It should be said that on his redirect examination the witness stated that he meant by his testimony that he was to return the $3,500 at any time he would be able to. Elsewhere in his evidence he states as a reason why these alleged loans were not entered in his books that it was a private matter between himself and his wife, and that he saw no reason for acquainting his clerks with it. It is contended on the part of the defendant that this $3,500 loan included in the alleged indebtedness of $15,500 represented the proceeds of sale of one of the pieces of real estate on Garden street, Hoboken, which stood in Mrs. Waefelaer's name, and which was sold in 1886 to one Brown for $9,500, subject to a mortgage to the Germania Life Insurance Company for $6,000, the proceeds of which mortgage had been received, as we have seen, by the assignor. The latter testified that the $3,500 was paid in cash, and that no mortgage had been given back to him to secure the payment of any part of it. This was untrue. As shown by certified copies of the record, two mortgages were given by Brown to Louis Waefelaer, the assignor,—one for $1,000, and the other for $500,—each of which recites that it was given to secure a portion of the purchase money upon the conveyance of the property. All of this evidence, with other facts and circumstances appearing in the proofs to which I have not specifically referred, points, it seems to me, inevitably to the conclusion that the property which was given by the assignor to his wife was regarded as hers only until he needed it for his own use; and that the proceeds, either from mortgages or upon sales, when received by him, were not loans from the wife, but became, with her assent, his absolute property. I am satisfied that the theory of the alleged indebtedness of $15,500 to her was a pure afterthought, suggested by his insolvent condition, and was a device to secure a large portion of the assigned estate for the benefit of his wife and himself, which in justice and in law should go to his creditors. It follows that the alleged payment to the wife of $1,200 on account of interest upon this alleged debt three days before the assignment was made was also fraudulent as against the creditors. The evidence shows that the check for this amount was drawn to bearer, and was cashed by Waefelaer himself. He states that he gave the bills to

his wife. We have only his word for this. But, be that as it may, the transaction was, in either aspect, a fraud upon the creditors as an unjustifiable appropriation in contemplation of a general assignment of property to which such creditors were entitled. It has been repeatedly held that conduct on the part of the assignor, such as I think has been established here, is sufficient to invalidate the assignment. Talcott v. Hess, 31 Hun, 282; Coursey v. Morton, 132 N. Y. 556, 30 N. E. 231. Where the transaction assailed is one between husband and wife, the courts scrutinize it with the utmost care, on the ground that fraud is so easily practiced under cover of the marriage relation. Manchester v. Tibbetts, 121 N. Y. 219, 24 N. E. 304; White v. Benjamin, 150 N. Y. 258, 44 N. E. 956. Having reached the conclusion that the assignment was fraudulent as against creditors, it follows that there must be judgment setting it aside as to the plaintiff, with costs against the assignee, payable out of the estate in his hands. He was entirely ignorant of the matters which have been brought in question, and acted in entire good faith. Indeed, it was his duty, under the circumstances, to defend the assignment. The appointment of a receiver seems to be unnecessary, as the assignee has reduced the assigned estate to cash, and, unless some reason to the contrary is shown on settlement of the decision and judgment, a direction should be given to him to pay the plaintiff's claim as established, and the costs of the action out of the moneys so in his hands.

Ordered accordingly.